```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/16/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DAVE SHOSTACK,                                       :
                                                     :
                          Plaintiff,                 :        **REPORT AND**
                                                     :        **RECOMMENDATION**
          -against-                                  :
                                                     :        15-CV-2255 (GBD) (JLC)
BARRY DILLER, *et al.*,                              :
                                                     :
                          Defendants.                :
-------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable George B. Daniels, United States District Judge:**

 *Pro se* plaintiff Dave Shostack brings this action against defendants

IAC/InteractiveCorp, Lending Tree, Inc., HomeAdvisor, and individual defendants

Barry Diller, Doug Lebda, and Matt Zurcher (collectively "Defendants"), alleging

violations of the Telephone Consumer Protection Act, the Gramm-Leach-Bliley Act,

New York General Business Law Section 349, the Federal Trade Commission Act, the

Fair Credit Reporting Act, and the Federal Trade Commission Telemarketing Sales

Rule. Defendants have moved for partial dismissal of the amended complaint pursuant

to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds

that certain claims in the amended complaint fail to state a claim on which relief may

be granted and for lack of personal jurisdiction over the individual defendants.[1] For the

reasons that follow, I recommend that Defendants' motion be granted.

---

[1] Defendants are not seeking dismissal of Shostack's Telephone Consumer Protection
Act claim at this time.

# I.   BACKGROUND

## A.   Facts

The relevant facts are taken from Shostack's Amended Verified Complaint filed May 20, 2015 ("Amended Complaint" or "Am. Compl.") (Dkt. No. 15) and are accepted as true for purposes of this motion.  Shostack asserts claims against Lending Tree, Inc. ("Lending Tree"), HomeAdvisor, their parent company, IAC/InteractiveCorp ("IAC") (collectively, the "Corporate Defendants"), and their respective Chief Executive Officers ("CEOs"), Doug Lebda, Matt Zurcher, and Barry Diller.  Am. Compl. ¶¶ 5-8.  Lending Tree operates a website (lendingtree.com) that provides customer leads to banks, mortgage brokers, home improvement companies, and general contractors, and HomeAdvisor similarly provides leads to home improvement and general contractors through its website homeadvisor.com.  *Id.* ¶¶ 9-10.  Shostack's phone number is on the National Do Not Call Registry.  *Id.* ¶ 12.

Shostack alleges that on November 12, 2013, he received two unsolicited telemarketing calls from mortgage brokers, who told him that they received his name through Lending Tree's website.  *Id.* ¶¶ 12, 13.[2]  Shostack then called Lending Tree and learned that an unknown person had stolen his identity and used his name, address, phone number, social security number, and a fake email address to apply for a mortgage on his home.  *Id.* ¶¶ 15, 17.  Shostack believes that, in connection with this mortgage application, Lending Tree ran his credit report without first calling him to verify that "the lead that [it] obtained was legitimate."  *Id.* ¶ 19.  Lending Tree also

---

[2] Shostack's Amended Complaint contains two paragraphs that are both numbered 12. The reference here is to the second of the two paragraphs.

gave Shostack's contact information to two mortgage brokers and to HomeAdvisor. *Id.* ¶ 20. Shostack contends that Lending Tree took these actions even though it knew from running his credit report that his social security number "did not match" the one provided in the online mortgage application submitted through its website. *Id.* HomeAdvisor then called Shostack on November 13, 2013 and again on November 18, 2013, despite the fact that Shostack had requested during the first call that it refrain from contacting him. *Id.* ¶¶ 21, 22, 24. HomeAdvisor also gave his contact information to six home improvement contractors, resulting in six additional telemarketing calls from the contractors to solicit home improvement work. *Id.* ¶¶ 18, 20.

On December 9, 2013, Shostack sent a demand letter to HomeAdvisor, requesting a copy of its internal Do Not Call Policy. *Id.* ¶ 26. On January 31, 2014, he sent demand letters to Lending Tree and IAC, requesting the same. *Id.* ¶¶ 27-28. To date, HomeAdvisor has not sent Shostack a copy of its policy. *Id.* ¶ 29.

**B.    Procedural History**

Shostack originally filed this action in the Supreme Court of the State of New York, New York County. Defendants removed the case to this Court on March 25, 2015. Notice of Removal of Action Pursuant to 28 U.S.C. § 1331 (Dkt. No. 1). On April 1, 2015, Defendants moved for partial dismissal of Shostack's amended complaint. (Dkt. Nos. 5-6). On May 20, 2015, Shostack filed an affidavit in opposition to the motion to dismiss (Dkt. No. 14) and further amended his complaint to address Defendants' legal arguments. (Dkt. No. 15). By Order dated May 22, 2015, the Court accepted Shostack's amended verified complaint and directed Defendants to renew or revise their motion to dismiss or answer the amended complaint by June 5, 2015. (Dkt.

No. 16).[3]

Accordingly, on June 5, Defendants filed an amended motion to dismiss Shostack's amended complaint along with a supporting memorandum of law. Notice of Motion for Dismissal (Dkt. No. 19); Defendants' Memorandum of Law in Support of Motion ("Defs. Mem.") (Dkt. No. 20); Amended Notice of Motion (Dkt. No. 22). On July 31, 2015, Shostack filed an affidavit in opposition ("Aff. in Opp'n") (Dkt. No. 24), and attempted to file a second amended verified complaint, which was not accepted because Shostack had neither obtained Defendants' consent nor the Court's permission to further amend his pleadings as required by Fed. R. Civ. P. 15. The Court subsequently directed Defendants to advise in their reply papers whether or not they opposed further amendments to the complaint. (Dkt. No. 26).

Defendants filed a reply on August 14, 2015, in which they indicated their opposition to Shostack's proposed amendments as untimely, prejudicial (by requiring them to prepare yet another motion to dismiss), and futile. Defendants' Reply Memorandum of Law ("Defs. Reply") (Dkt. No. 29); Declaration of Daniel L. Brown dated August 14, 2015 ("Brown Decl.") (Dkt. No. 30). Thereafter, Shostack sought permission to file a sur-reply (Dkt. No. 37), which the Court denied, finding that Shostack had already been given an adequate opportunity to respond to Defendants' motion and that their reply papers asserted no new facts nor raised new legal arguments that would require further response. (Dkt. No. 38). Accordingly, the Court

---

[3] On June 1, 2015, Shostack filed an amended affidavit in opposition (Dkt. No. 17), which was effectively mooted by Defendants' renewed motion on June 5, 2015.

Court considers the motion fully submitted.[4]

## II.   DISCUSSION

### A.   Legal Standards on a Motion to Dismiss

#### 1.   Rule 12(b)(2) – Personal Jurisdiction

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010) (internal quotation marks omitted). This requires "making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" *Am. Buddha*, 609 F.3d at 35 (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003)). In considering whether this burden has been met, a court "will not draw 'argumentative inferences' in the plaintiff's favor," nor is it "required 'to accept as true a legal conclusion couched as a factual allegation.'" *Licci ex rel. Licci*, 673 F.3d at 59 (quoting *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) and *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

#### 2.   Rule 12(b)(6) – Failure to State a Claim

Rule 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, a court accepts all factual allegations in the complaint as true and

---

[4] This case has been referred to me for general pretrial supervision and a report and recommendation on any dispositive motion. (Dkt. No. 13).

draws all reasonable inferences in the plaintiff's favor. *See, e.g., Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013). To survive dismissal, a plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Importantly, the 'plausibility' standard applies only to a complaint's *factual* allegations. [The Court] give[s] no effect at all to 'legal conclusions couched as factual allegations.'" *Citigroup, Inc.*, 709 F.3d at 135 (quoting *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,* 507 F.3d 117, 121 (2d Cir. 2007)).[5]

While *pro se* complaints are read liberally "to raise the strongest arguments they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted), they must still state a plausible claim for relief. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Thus, a district court should dismiss a *pro se* plaintiff's complaint if it "fail[s] to meet minimum pleading requirements." *Kinsey v. Bloomberg*, No. 12-CV-8936 (PAE) (JCF), 2014 WL 630670, at *3 (S.D.N.Y. Feb. 18, 2014).

---

[5] Additionally, "'[i]n ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference,' as well as 'matters of which judicial notice may be taken, and documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 163-64 (S.D.N.Y. 2014) (quoting *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.,* 742 F.3d 42, 44 n.1 (2d Cir. 2014)).

**B.     Shostack's Claims Against the Individual Defendants Should Be Dismissed**

Defendants move to dismiss Shostack's allegations against Lebda, Zurcher, and Diller, the CEOs of Lending Tree, HomeAdvisor, and IAC respectively, for lack of personal jurisdiction and, in the alternative, for failure to state a claim against them. The Court agrees that Shostack's complaint is deficient in both respects.

### 1.     Shostack Has Failed to Plead Facts Establishing Personal Jurisdiction over the Individual Defendants

Shostack argues that the Court has personal jurisdiction over Defendants Lebda, Zurcher, and Diller because they are the CEOs of the Corporate Defendants, Am. Compl. ¶¶ 6-8, and, as officers of their respective companies, owed various duties to Shostack and can be held vicariously liable for the acts of their employees. *Id.* ¶¶ 30-42, 49-51. Shostack does not allege that the individual defendants themselves engaged or had any personal involvement in the allegedly illegal acts.

"In litigation arising under federal statutes that do not contain their own jurisdictional provisions," such as those under which Shostack purports to sue Defendants Lebda, Zurcher, and Diller, "federal courts are to apply the personal jurisdiction rules of the forum state," in this case, New York, "provided that those rules are consistent with the requirements of Due Process." *Am. Buddha*, 609 F.3d at 35. Accordingly, the Court must first assess whether there is any basis for personal jurisdiction over these individuals pursuant to N.Y. CPLR ("CPLR") sections 301 and 302.

"Under New York's general jurisdiction statute, § 301, personal jurisdiction is proper if the defendant is 'doing business' in New York so as to establish a presence in

the State." *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 322 (S.D.N.Y. 1998). To obtain general jurisdiction pursuant to CPLR 301 over an individual, he must be doing business in New York in his personal capacity, not merely as an officer of a corporation that does business in New York. *Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 n.5 (S.D.N.Y. 1995) (citing *Laufer v. Ostrow*, 55 N.Y.2d 305, 313 (1982) ("Although a corporation can act only through an employee or agent, the employee or agent . . . can act on behalf of himself or his employer or principal. He does not subject himself, individually, to the CPLR 301 jurisdiction of our courts, however, unless he is doing business in our State individually.") (citations omitted)). "If jurisdiction cannot be obtained under the general jurisdiction statute, it may nevertheless be found pursuant to New York's long-arm statute, § 302(a), which permits specific jurisdiction over a defendant when the plaintiff's claim relates directly to the defendant's New York contacts, however limited." *Karabu Corp.*, 16 F. Supp. 2d at 322 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Here, Shostack does not contend that any of the individual defendants "personally engaged in any business in New York sufficient to confer jurisdiction over them in their individual capacities." *Karabu Corp.*, 16 F. Supp. 2d at 323. Shostack purports to sue the individuals solely by virtue of their roles as officers of the Corporate Defendants. However, it is well-settled that "a general allegation that an officer controls a corporation is not sufficient to establish personal jurisdiction." *Pilates, Inc. v. Current Concepts Kenneth Endelman*, No. 96-CV-0043 (MGC), 1996 WL 599654, at *3 (S.D.N.Y. Oct. 18, 1996); *see also, e.g., Arma v. Buyseasons*, Inc., 591 F. Supp. 2d 637,

8

647 (S.D.N.Y. 2008); *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 982 (S.D.N.Y. 1992).

Therefore, Shostack's argument "necessarily relies on New York's agency theory of personal jurisdiction," *i.e.*, the Corporate Defendants were acting as agents of the individual officers when engaging in the allegedly illegal acts that gave rise to the litigation. *Arma*, 591 F. Supp. 2d at 647; *see also, e.g.*, *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988); *Karabu Corp.*, 16 F. Supp. 2d at 323; *Kinetic Instruments, Inc.*, 802 F. Supp. at 984. "In order to attribute a corporation's New York contacts to an individual under CPLR § 302(a)(1), New York law requires a Plaintiff to 'convince the court that [the corporation] engaged in purposeful activities in this State in relation to [Plaintiff's] transaction for the benefit of and with the knowledge and consent of the [individual defendant] and that [the individual defendant] exercised some control over [the corporation] in the matter.'" *Arma*, 591 F. Supp. 2d at 647 (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)). Necessary to this inquiry, the plaintiff must demonstrate that the corporate officers were "'primary actor[s] in the transaction in New York' that gave rise to the litigation, and not merely 'some corporate employee[s] . . . who played no part in' it." *Id.* (quoting *Karabu Corp.*, 16 F. Supp. 2d at 323); *see also, e.g.*, *Retail Software Servs., Inc.*, 854 F.2d at 22; *Barron Partners, LP v. Lab123, Inc.*, No. 07-CV-11135 (JSR), 2008 WL 2902187, at *10 (S.D.N.Y. July 25, 2008).

Conclusory allegations that the corporate officers exercised control over the corporation by virtue of their title or position within the corporation, or derived some benefit from the corporation's activities do not suffice; courts routinely grant motions to

dismiss for lack of personal jurisdiction when the plaintiff relies solely on such vague assertions. *See, e.g., Barron Partners, LP*, 2008 WL 2902187, at *10; *Arma*, 591 F. Supp. 2d at 648; *Karabu Corp.*, 16 F. Supp. 2d at 324; *Pilates, Inc.*, 1996 WL 599654, at *3.

Shostack's allegations are precisely of this kind. He asserts no facts alleging that the individual defendants had any direct involvement in the actions giving rise to this litigation. Accordingly, Shostack has failed to establish a *prima facie* case for personal jurisdiction over any of the individual defendants.

## 2.   Shostack Fails to State a Claim Against the Individual Defendants

Even if the Court had personal jurisdiction over Defendants Lebda, Zurcher, and Diller, Shostack's complaint still fails to state a claim against them. Although it is well-established that principals or employers may be vicariously liable for the acts of their agents or employees acting in the scope of their authority or employment, it is equally well-established that absent "special circumstances[,] it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents." *Meyer v. Holley*, 537 U.S. 280, 286 (2003) (citing 3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1137, pp. 300-01 (rev. ed. 1991-1994); 10 *id.,* § 4877 (rev. ed. 1997-2001)). Similarly, "[i]n general, absent bad faith or fraud, corporate officers and directors acting within the scope of their employment cannot be held personally liable for breaches of contract or tortious acts committed by their corporations." *Rella v. N. Atl. Marine, Ltd.*, No. 02-CV-8573 (GEL), 2004 WL 1418021, at *9 (S.D.N.Y. June 23, 2004) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1177 (2d Cir. 1993) and *Amour & Co. v. Celic*, 294 F.2d

10

432, 439 (2d Cir. 1961)); *accord Teledyne Indus., Inc. v. Eon Corp.*, 373 F. Supp. 191, 196 (S.D.N.Y. 1974) ("It is now well settled that an officer or director is not, merely by virtue of his office, liable for the tortious acts of the corporation. He must direct, authorize, or in some meaningful sense participate actively in the assertedly wrongful conduct.") (citing cases).

As previously discussed, Shostack has not pled any facts to demonstrate that the individual defendants themselves engaged in the actions of which he complains, directed or authorized them, or were even aware of them. Shostack merely speculates ("believes") that the individual defendants should have undertaken greater efforts to "educate, supervise and monitor" the actions of their respective companies, and that they "should have been able to foresee" and "could have prevented" the allegedly illegal credit check and telephone calls to his residence. *See, e.g.*, Am. Compl. ¶¶ 33-42. Shostack alleges that the individual defendants each had a duty of care to him to undertake these efforts. *Id.* These are legal conclusions, which, unlike factual allegations, are not granted the presumption of truth on a motion to dismiss. *See, e.g.*, *Citigroup, Inc.*, 709 F.3d at 135. Shostack admits that he "had no prior business relationship with any of the Defendants," Am. Compl. ¶ 44, from which a duty of care could arise. To the extent officers and directors of a corporation owe a duty of care, they owe that duty to the corporation itself, not to individual members of the general public. *See, e.g.*, *In re Trinsum Grp., Inc.*, 466 B.R. 596, 609 (Bankr. S.D.N.Y. 2012) ("In managing a corporation, . . . directors [and officers] have fiduciary duties to the corporation and its shareholders.").

Absent specific allegations that the individual defendants participated in any of

the allegedly illegal acts committed by their respective corporations, they cannot be held personally liable for those actions. The authority Shostack relies upon to hold the individuals liable is not inconsistent with these principles. Shostack cites a South Carolina case, *BPS, Inc. v. Worthy*, 362 S.C. 319 (Ct. App. 2005), which recognized that "to incur liability, the officer, director, or controlling person must ordinarily be shown to have in some way participated in or directed the tortious act." *Id.* at 328 (citation omitted). In that case, the court found there was evidence that suggested the corporate officer directly participated in or directed the tortious acts at issue, and on that basis, he could be held personally liable. *Id.* at 328-29. There are no such allegations here. Accordingly, the Court recommends that all claims against the individual defendants be dismissed.[6]

## C.    Shostack's Claims Against IAC Should Be Dismissed

Shostack alleges that IAC is vicariously liable for the actions of Lending Tree and HomeAdvisor because it is the parent company of both subsidiary corporations, "benefits financially" from their actions, "had a duty of care" to protect Shostack's privacy, and was "negligent careless and reckless by failing to . . . monitor the actions" of Defendants Lending Tree and HomeAdvisor. Am. Compl. ¶¶ 5, 45, 48, 49. These allegations cannot serve as a basis for holding IAC liable.

---

[6] In his opposition, Shostack discusses the legal principle of agency ratification: "That a person can be held responsible for the acts of a third party if the person ratifies the acts of the third party. Ratification exists if the person becomes aware of what the third party did and with that knowledge either retains the benefits of the third party's acts or fails to repudiate those acts promptly upon learning them." Aff. in Opp'n ¶ 23. Although that theory might serve as a basis for liability under some circumstances, the agency ratification doctrine does not apply in this case where Shostack has neither alleged that the individual defendants were actually aware of the specific activities at issue nor derived a direct benefit from them.

As the Supreme Court has explained, "[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citations omitted); *see also, e.g., New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014). Absent direct involvement in the allegedly illegal acts, a parent corporation can be held liable for a subsidiary's actions only if the plaintiff can show that the subsidiary is an agent or alter ego of the parent. *See, e.g., New York State Elec. & Gas Corp.*, 766 F.3d at 224; *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 418 (S.D.N.Y. 2011). This is known as piercing the corporate veil, and in New York, for example, it requires proof that "(1) the parent corporation dominates the subsidiary in such a way as to make it a 'mere instrumentality' of the parent; (2) the parent company exploits its control to 'commit fraud or other wrong'; and (3) the plaintiff suffers an unjust loss or injury as a result of the fraud or wrong." *New York State Elec. & Gas Corp.*, 766 F.3d at 224 (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991)).[7]

Here, Shostack has not alleged that IAC had any direct involvement with running his credit report or facilitating the allegedly illegal telemarketing calls to his

---

[7] "Under New York choice-of-law principles, the issue of whether the corporate veil may be pierced is determined under the law of the state of incorporation." *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d at 418. Accordingly, the test required to pierce the corporate veil of IAC and hold it liable for the actions of Lending Tree and HomeAdvisor is determined by their respective states of incorporation. Although state standards differ in some respects, these differences are immaterial here where the allegations in the amended complaint are insufficient to meet any standard.

residence. Nor does the amended complaint contain facts that would satisfy any of the elements required to pierce the corporate veil to hold IAC liable for the actions of Lending Tree and HomeAdvisor. *See, e.g., Allison v. Clos-ette Too, LLC*, No. 14-CV-1618 (LAK) (JCF), 2014 WL 4996358, at *7 (S.D.N.Y. Sept. 15, 2014) ("[T]he facts alleged by the plaintiff show no more than the existence of a parent-subsidiary relationship between Clos-ette and C2, which is not enough to justify piercing the corporate veil."), *adopted sub nom. Ellison v. Clos-ette Too, LLC*, 2014 WL 5002099 (S.D.N.Y. Oct. 7, 2014); *Desyatnikov v. Credit Suisse Grp., Inc.*, No. 10-CV-1870 (DLI) (VVP), 2012 WL 1019990, at *2 (E.D.N.Y. Mar. 26, 2012) ("The only link that the complaint asserts is that Credit Suisse is the parent company to Clariden Leu, which is insufficient to hold Credit Suisse liable."); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d at 419 ("It is clear that simply owning, even wholly owning, a subsidiary is insufficient to pierce the corporate veil.") Accordingly, Shostack's claims against IAC should be dismissed.

**D.    The Majority of the Complaint Fails to State a Claim**

**1.    Shostack's GLBA Claim Should Be Dismissed Because the Statute Does Not Provide for a Private Right of Action**

Shostack asserts a claim against Lending Tree (and vicariously against IAC) for violating the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801 *et seq.*, by allegedly running his credit report without his permission. *See* Am. Compl. ¶ 53(a); *see also id.* ¶¶ 46, 47.

As a threshold matter, Shostack lacks standing to bring a claim to enforce the GLBA. *See* 15 U.S.C. § 6805(a) ("[T]his subchapter and the regulations prescribed thereunder shall be enforced by the Bureau of Consumer Financial Protection, the

Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction . . ."). It is well-settled that the GLBA does not provide for a private right of action. *See, e.g., Barroga-Hayes v. Susan D. Settenbrino, P.C.*, No. 10-CV-5298 (RJD), 2012 WL 1118194, at *1 (E.D.N.Y. Mar. 30, 2012) ("no express or implied private right of action exists to enforce the GLBA"); *Huelbig v. Aurora Loan Servs., LLC*, No. 10-CV-6215 (RJH) (THK), 2011 WL 4348281, at *5 (S.D.N.Y. May 18, 2011), *adopted*, 2011 WL 4348275 (S.D.N.Y. Sept. 16, 2011); *Rezende v. Citigroup Global Markets, Inc.*, No. 09-CV-9392 (HB), 2010 WL 4739952, at *5 (S.D.N.Y. Nov. 18, 2010) ("As courts in this district and elsewhere have recognized, the GLBA does not provide for a private right of action.") (citations omitted). Indeed, in his opposition, Shostack concedes that the GLBA does not contain a private right of action, but maintains that "the court can order punitive damages to punish defendant if it feels that Defendant's action where [sic] wanton, unconscionable, reckless and negligent." Aff. in Opp'n ¶ 28. The Court, however, has no authority to order any relief, warranted or not, where the party seeking it has no right to enforce the statute. Accordingly, Shostack's claim under the GLBA should be dismissed.

### 2.   Shostack Fails to State a Claim under N.Y. GBL Section 349

Shostack also claims that Lending Tree and IAC are liable under the "Unfair and Deceptive Trade Practices Act" for the allegedly unauthorized credit check performed by Lending Tree. *See* Am. Compl. ¶ 53(a); *see also id.* ¶¶ 46, 47. Further, Shostack claims that HomeAdvisor violated this statute by "failing to call [Shostack] to verify whether the information that they received from Defendant Lending Tree was

15

valid prior to giving [his] personal information to 6 home improvement contractors . . ." *Id.* ¶ 43. These allusions to the "Unfair and Deceptive Trade Practices Act" appear to refer to New York General Business Law ("N.Y. GBL") section 349, titled "Deceptive acts and practices unlawful." *See* Am. Compl. ¶ 53(f) (including citation to N.Y. GBL § 349); *see also* Am. Compl. ¶¶ 46, 47, 53(a). N.Y. GBL section 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." For willful and knowing violations, the court has discretion to award up to three times the amount of actual damages with a cap of $1,000 dollars. *Id.*

"To successfully assert a claim under General Business Law § 349(h) or § 350, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (quoting *City of New York v Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2009)); *accord Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010). "[C]onsumer-oriented conduct does not require a repetition or pattern of deceptive conduct;" conduct directed at a single consumer may potentially qualify if it "potentially affects similarly situated consumers." *Wilson*, 625 F.3d at 64 (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.* ("*Oswego*"), 85 N.Y.2d 20, 25, 26-27 (1995)). However, courts have held that private transactions of a non-recurring nature fall outside the ambit of the statute. *See, e.g.*, *Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984).

The conduct at issue here involves the alleged misuse of Shostack's personal information: Lending Tree ran a credit check on Shostack "without his permission" and both Lending Tree and HomeAdvisor disclosed Shostack's personal information to third parties, resulting in "unnecessary telemarketing calls" to Shostack's residence. Am. Compl. ¶ 46. This chain of events was instigated by an unknown third party who stole Shostack's identity information and used it to complete a mortgage application on Lending Tree's website. *Id.* ¶¶ 17, 23.

Defendants argue that these actions do not constitute consumer-oriented conduct because they are directed solely at Shostack, not at the general public. Defs. Mem. at 17. However, a plaintiff need not delay bringing his suit until a defendants' improper conduct harms other individuals as long as the conduct has the potential to affect similarly situated consumers. *Oswego*, 85 N.Y.2d at 25 (noting that legislative history demonstrates that statute was intended to "afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds") (citation and internal quotation marks omitted); *see also, e.g.*, *Mayfield v. Asta Funding, Inc.*, No. 14-CV-2591 (LAP), 2015 WL 1501100, at *10 (S.D.N.Y. Mar. 31, 2015) ("Courts construe the consumer-oriented requirement liberally."). Defendants' conduct was not unique to Shostack. These actions were part of their ordinary course of business; the same or similar actions are potentially (and quite likely) directed toward numerous other consumers on a daily basis. Accordingly, Defendants' acts constitute "consumer-oriented conduct."

The analysis, however, does not end there. Shostack must also demonstrate that Defendants' alleged acts were "deceptive or misleading in a material way." *Oswego*, 85

N.Y.2d at 25. Essentially, the statute is directed toward consumer fraud. *See, e.g.*, *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084, 1089 n.6 (S.D.N.Y. 1988) (citing cases). Materially deceptive or misleading acts are measured by an objective standard and are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26. Nothing about Lending Tree's or HomeAdvisor's actions could be construed to be deceptive or misleading in the sense intended by the statute. Although the actions of the unknown third party who misappropriated Shostack's identity were undoubtedly fraudulent, there was nothing deceptive about Lending Tree running Shostack's credit report in relation to the online mortgage application purportedly submitted in his name. Similarly, although the dissemination of his contact information by Lending Tree and HomeAdvisor to various third parties may have affected Shostack's privacy, these acts neither deceived nor misled anyone in the manner proscribed by the N.Y. GBL. *Cf. Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000) (individual representing herself as sole author of best seller where she co-wrote portion of book not misleading conduct); *Nicholson v. Forster & Garbus LLP*, No. 11-CV-0524 (SJF) (WDW), 2012 WL 273150, at *3 (E.D.N.Y. Jan. 30, 2012) (debt collection caller purporting to be employee of debt collector when in fact calling from India call center not misleading conduct).

Lastly, Shostack has not alleged any actual injury caused by Defendants' conduct. An unquantifiable injury to a privacy interest generally does not suffice. *See, e.g.*, *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 391 (E.D.N.Y. 2011) (unquantifiable emotional distress damages did not constitute injury).[8] Therefore,

---

[8] Shostack's amended complaint contains several passing references to the Defendants'

18

Shostack has failed to make a *prima facie* claim under the N.Y. GBL and this claim
should be dismissed.

### 3. Shostack's FTC Act Claim Should Be Dismissed Because the Statute Does Not Provide for a Private Right of Action

Shostack's allegations against Lending Tree, HomeAdvisor, and IAC under the

"Unfair and Deceptive Trade Practices Act" may also refer to section 5(a) of the Federal

Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), which outlaws "unfair or

deceptive acts or practices in or affecting commerce." *Id.* § 45(a)(1). However, like the

GLBA, the FTC Act does not provide for a private right of action. *See* 15 U.S.C.

§ 45(a)(2) ("The Commission is hereby empowered and directed to prevent persons,

partnerships, or corporations . . . from using . . . unfair or deceptive acts or practices in

or affecting commerce."); *see also, e.g., Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499

---

breaching a "duty of care" to protect his privacy. *See, e.g.* Am. Compl. ¶ 45 (with
respect to IAC and Lending Tree). As Defendants correctly note in their motion papers,
"New York does not recognize a common-law right to privacy" and only recognizes a
limited statutory right to privacy, which is "strictly limited to nonconsensual
commercial appropriations of the name, portrait or picture of a living person."
*Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*, 94 N.Y.2d 436, 441
(2000) (citation and internal quotation marks omitted).

Additionally, in so far as Shostack is attempting to assert state-law negligence claims
against Defendants, these claims would fail because he has not alleged the existence of
a cognizable duty owed to him by the defendants (having no prior business relationship
with any of them) nor any actual damages resulting from their alleged negligent
actions. *See, e.g., Integrated Waste Servs., Inc. v. Akzo Nobel Salt, Inc.*, 113 F.3d 296,
299 (2d Cir. 1997) (*prima facie* case of negligence under New York law requires
demonstrating: "1) the existence of a duty flowing from defendant to plaintiff; 2) a
breach of this duty; 3) a reasonably close causal connection between the contact and the
resulting injury; and 4) actual loss, harm or damage.") (citation and internal quotation
marks omitted) (negligence claim failed because defendants owed no legal duty to
plaintiff); *Mizrahi v. Taic*, 266 A.D.2d 59, 60 (1st Dep't 1999) ("[A]ctual damages are an
essential aspect of a negligence claim under New York law.") (citation omitted).

F.2d 232, 237 (2d Cir. 1974) ("[T]he provisions of the Federal Trade Commission Act

may be enforced only by the Federal Trade Commission.  Nowhere does the Act bestow

upon either competitors or consumers standing to enforce its provisions."); *Oliver v.

U.S. Bancorp*, No. 14-CV-8948 (PKC), 2015 WL 4111908, at *6 (S.D.N.Y. July 8, 2015)

("Notwithstanding plaintiffs' conclusory reference to the FTC Act, it is well settled that

there is no private right of action under the statute.") (citing *Alfred Dunhill Ltd.*, 499

F.2d at 237); *Rotblut v. Ben Hur Moving & Storage, Inc.*, 585 F. Supp. 2d 557, 560

(S.D.N.Y. 2008) ("[T]he Federal Trade Commission Act, which prohibits unfair or

deceptive practices, does not provide for a private cause of action.").  Accordingly,

Shostack's claim under the FTC Act should be dismissed.

### 4.   Shostack Fails to State a Claim under the FCRA

Shostack further alleges that Lending Tree and IAC are liable for "running [his]

credit without his permission" under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

§ 1681n.  Am. Compl. ¶ 53(a); *see also id.* ¶¶ 38, 40.  Pursuant to section 1681n(a) of the

FCRA, a consumer may collect actual, statutory, or punitive damages from a person

who willfully fails to comply with any of the requirements imposed under the FCRA.[9]

Section 1681b of the FCRA sets forth the permissible purposes of consumer reports and

prohibits a person from using or obtaining a report for any purpose not specifically

authorized by the FCRA.  *See* 15 U.S.C. § 1681b(f).  From the facts in his amended

complaint, the Court construes Shostack's allegations to be that Lending Tree failed to

---

[9] As Defendants correctly note, section 1681n(b), relating to the obtainment of a
consumer report "under false pretenses or knowingly without a permissible purpose," is
inapplicable because that provision establishes liability only to the consumer report
agency from which the report was obtained, not to the consumer himself.  15 U.S.C.
§ 1681n(b).

comply with section 1681b(f) by obtaining his consumer report for a purpose not authorized by the FCRA. *See id.*

To state a claim for civil liability pursuant to 1681n(a), a plaintiff must allege both that the defendant used or obtained the plaintiff's credit report for an impermissible purpose and that the violation was willful. *Braun v. Client Servs. Inc.*, 14 F. Supp. 3d 391, 396 (S.D.N.Y. 2014) (quoting *Perl v. Am. Express*, Nos. 12-CV-4380 (ER), 12-CV-4796 (ER), 2012 WL 2711270, at *2 (S.D.N.Y. July 9, 2012)). In regards to the willfulness requirement, several courts have held that, in order to survive a motion to dismiss, a plaintiff must "allege specific facts as to the defendant's mental state when the defendant accessed the plaintiff's credit report. Merely stating that the violation was 'willful' or 'negligent' is insufficient." *Selvam v. Experian Info. Solutions, Inc.*, No. 13-CV-6078 (DLI) (JO), 2015 WL 1034891, at *2 (E.D.N.Y. Mar. 10, 2015) (quoting *Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 167 (S.D.N.Y. 2014) (citing cases)). Willfulness as used in section 1681n(a) means knowledge or recklessness. *See, e.g., Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 56-60 (2007); *Perl*, 2012 WL 2711270, at *2. As in the common law, recklessness is construed according to an objective standard to encompass an "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco Ins. Co.*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

The first question is whether Lending Tree obtained Shostack's credit report for an impermissible purpose. The amended complaint alleges that on November 12, 2013 someone committed identity theft against Shostack and used his personal information to apply for a mortgage on his home. Am. Compl. ¶ 15. Lending Tree responded to this

application by running Shostack's credit report. *Id.* ¶ 16. Shostack then called Lending Tree to notify the company that he did not authorize the credit check and that he had been a victim of identity theft. *Id.* ¶ 17. Under the FCRA, it is permissible to obtain a credit report if the recipient "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer." 15 U.S.C. § 1681b(a)(3)(A). Accordingly, Lending Tree's actions were permissible in so far as they related to the receipt of a mortgage application from a person purporting to be Dave Shostack. At the time Lending Tree ran Shostack's credit report, it had no reason to know that he had not authorized the transaction. And contrary to the conclusory allegations in the amended complaint, there is nothing in the FCRA that imposes an affirmative duty on Lending Tree to call Shostack before running his credit report "to verify[ ] that the information that [it] received online was . . . valid . . ." *See* Am. Compl. ¶ 38.

Even if the Court were to find the credit check to have been impermissible, Shostack's allegations as to Defendants' state of mind are merely conclusory and do not satisfy the *Iqbal* pleading standard. *See Iqbal,* 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."); *see, also, e.g., Selvam*, 2015 WL 1034891, at *2 (dismissing FCRA claim because plaintiff's allegations of willfulness were "conclusory and completely lack[ed] the specificity required by *Iqbal* and *Twombly*"); *Farkash v. RJM Acquisitions Funding, Inc.*, No. 12-CV-1017 (ER), 2012 WL 1948643, at *3 (S.D.N.Y. May 29, 2012) (Plaintiff "alleges no facts that would establish that Defendants knew they had no permissible purpose or recklessly disregarded their obligation to have a permissible purpose under

the law."); *Perl*, 2012 WL 2711270, at *2 (same).

It is not enough that Shostack "feels that the actions of defendant Lending Tree are extremely wanton, unconscionable, reckless and negligent." Aff. in Opp'n ¶ 29. Shostack must allege some factual basis from which the Court can infer a culpable state of mind. Shostack further contends that "all Defendants should have known better given the fact that Defendant Lending Tree was previously involved in a class action for data breach by their own employees." *Id.* ¶ 31; Am. Compl. ¶ 46. However, the type of constructive knowledge Shostack imputes to Defendants would, at most, be relevant to the application of a negligence standard, not to the much higher recklessness standard embodied in section 1681n(a). *See, e.g., Safeco Ins. Co.*, 551 U.S. at 69 ("[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.").[10]

In his opposition, Shostack asserts various theories of vicarious liability and agency to attempt to hold Lending Tree liable for the actions of the third party who stole his identity and led to the unauthorized credit check. He cites cases outside of this Circuit which hold that a company can be vicariously liable for its employees' willful violations of the FCRA based on various common law agency principles. *See,*

---

[10] Shostack also alleges that Lending Tree knew, after running his credit report, that he was not the person who applied for the mortgage because the social security numbers did not match, and it nonetheless gave Shostack's personal information to two mortgage companies and HomeAdvisor. Am. Compl. ¶ 20. Even crediting Shostack's allegations as true, Lending Tree's actions *after* running Shostack's credit report are irrelevant to its potential liability under the FCRA.

*e.g.*, *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965-66 (6th Cir. 1998); *Smith v. Sears, Roebuck & Co.*, 276 F. Supp. 2d 603 (S.D. Miss. 2003) (noting, however, that that conclusion "has not been unanimous"); *Amora v. Metro Ford Sales & Serv.*, 206 F. Supp. 2d 947, 953 (N.D. Ill. 2002). *But see Kodrick v. Ferguson*, 54 F. Supp. 2d 788, 798 (N.D. Ill. 1999) (holding company not liable under § 1681n for employee's unauthorized willful FCRA violations where employee "obtained the report under false pretenses and for personal use without the express or implied approval of her supervisors"). The Second Circuit has not addressed the question as to whether vicarious liability can be imposed under the FCRA. Nevertheless, the issue need not be reached here because all of the cases cited by Shostack are distinguished by the salient fact that an employee or agent of the company was alleged to have willfully violated the FCRA. Here, the only willful acts alleged in Shostack's amended complaint are those committed by the third party who stole his identity and fraudulently applied for a mortgage on his home. Shostack asks the Court, in effect, to hold Lending Tree liable for the acts of this unknown third party, an interpretation of liability under the FCRA that no court has endorsed. Accordingly, Shostack's FCRA claim should also be dismissed.

Although Shostack did not allege a claim under section 1681o of the FCRA, the Court notes that, unlike section 1681n, which applies only to willful violations, section 1681o creates civil liability for negligent violations of the FCRA. *See* 15 U.S.C. § 1681o(a). Some of Shostack's allegations as to Lending Tree's culpability for obtaining his credit report plausibly meet a negligence standard. However, imposing liability under section 1681o requires that a plaintiff demonstrate actual damages resulting from the defendants' actions. *See, e.g.*, *Braun*, 14 F. Supp. 3d at 397-98 (citing cases).

24

Shostack did not plead any actual damages, *see* Am. Compl. ¶ 53, an omission that Defendants interpreted to be a concession that he has none.  Shostack did not rebut Defendants' argument in his opposition papers, contending only that "actual damages [are] irrelevant" to his claims.  Aff. in Opp'n ¶ 17; *see also id.* ¶ 18 ("[I]t is not necessary to find that Plaintiff has an actual injury or actual damages.") (citations omitted).  Consequently, allowing Shostack to further amend his complaint to allege a claim under section 1681o would be futile.

### 5.   Shostack Fails to State a Claim Under the FTC Telemarketing Sales Rule

Shostack asserts claims against HomeAdvisor, Lending Tree, and IAC for violating the FTC Telemarketing Sales Rule ("TSR").  *See* Am. Compl. ¶¶ 25, 29, 42, 43, 46, 47, 52, 53(b), (c), (e).  Specifically, Shostack alleges that HomeAdvisor violated the TSR by: (1) calling him a second time, on November 18, 2013, after Shostack told a HomeAdvisor representative on November 13, 2013 not to call his residence and to place his home phone number on the company's "in house Do Not Call List," *id.* ¶¶ 25, 52(b), 53(b)-(c); (2) providing his home phone number, which is on the national do-not-call registry, to six home improvement contractors, which resulted in six "illegal telemarketing calls," *id.* ¶¶ 42, 43, 53(b); and (3) failing to send Shostack a copy of its "in house Do Not Call Policy," after he requested it.  *Id.* ¶¶ 29, 53(d).  As for Lending Tree, Shostack alleges that by providing his home phone number to two mortgage brokers and to HomeAdvisor, it also violated the TSR.  *Id.* ¶¶ 46, 53(e).

The Telemarketing and Consumer Fraud and Abuse Prevention Act ("TCFAPA") authorizes the FTC to implement and enforce a national do-not-call registry, 15 U.S.C. § 6151(a), and to prescribe rules prohibiting abusive telemarketing acts and practices.

15 U.S.C. § 6102(a)(3).  Among those rules, the TSR forbids telephone solicitations to a person if the person has previously stated that he does not wish to receive a call made by the company whose services are being offered, or to a person whose telephone number is on the FTC's national do-not-call registry.  16 C.F.R. § 310.4(b)(1)(iii)(A)-(B). The TCFAPA creates a private right of action for any person adversely affected by a telemarketing practice that violates any of the FTC's rules, *e.g.* the TSR.  15 U.S.C. § 6104(a).  In order to sustain a claim under the TSR, however, a plaintiff must allege actual damages of $50,000 or more, which excludes punitive damages.  *Id.*; *see also, e.g., Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers,* No. 12-CV-630, 2014 WL 1119594, at *9 (S.D. Ohio Mar. 20, 2014); *Azeltine v. Bank of Am.,* No. 10-CV-218 (TUC) (RCC), 2010 WL 6511710, at *7 (D. Ariz. Dec. 14, 2010), *adopted,* 2011 WL 1465462 (D. Ariz. Apr. 18, 2011); *Cellco P'ship v. Dealers Warranty, LLC,* No. 09-CV-1814 (FLW), 2010 WL 3946713, at *13 (D.N.J. Oct. 5, 2010).

Shostack has not alleged any actual damages.  Rather, he claims only statutory damages (and punitive damages, which do not count toward the $50,000 requirement), the sum of which do not meet the $50,000 threshold.  *See* Am. Compl. ¶ 53. Accordingly, Shostack's TSR claim should also be dismissed.[11]

---

[11] Throughout his amended complaint, Shostack makes vague references to the "FCC Rules."  Am. Compl. ¶¶29, 42, 43, 52(a), 53(d), (e).  The Court cannot intuit which of the many FCC regulations Shostack may be referring to.  Claims based on such vague assertions, even those made by *pro se* plaintiffs, do not meet the minimum pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, and should be dismissed.  *See, e.g., Perl,* 2012 WL 2711270, at *1 ("[A] *pro se* complaint must still provide a defendant with fair notice of what the plaintiff's claims are and each of the grounds upon which they rest.") (citation omitted); *Wendell Bail Bonding Co. No. 0811 v. Cuomo,* No. 10-CV-4022 (SJF), 2011 WL 5546929, at *2 (E.D.N.Y. Nov. 10, 2011) ("A *pro se* plaintiff's submissions should be construed 'liberally,' and 'interpreted to raise the strongest arguments that they suggest,' but *pro se* plaintiffs nevertheless 'remain

### E.    Leave to Further Amend the Complaint Should Be Denied

Shostack has sought permission to amend his complaint a second time.  (Dkt.
Nos. 31 & 32).  Shostack has already amended his complaint once in this Court to
attempt to address Defendants' arguments made in their original motion to dismiss
(Dkt. No. 15), which necessitated that Defendants amend their motion.  (Dkt. No. 22).
Shostack attempted to file a further amended complaint when he submitted his
affidavit opposing Defendants' amended motion, which the Court rejected because
Shostack had not obtained Defendants' consent nor the Court's permission to further
amend under Rule 15 of the Federal Rules of Civil Procedure.  In their Reply,
Defendants objected to further amendments on the ground that, among other reasons,
they would be futile because Shostack's "proposed new pleading merely rehashes in
different language the same conclusory allegations contained in the operative
complaint."  Defs. Reply at 9.  Defendants' reply papers included as an exhibit a
"blackline comparison between Plaintiff's Amended Verified Complaint (see ECF No.
15) . . . and Plaintiff's purported Second Amended Verified Complaint (see ECF Nos. 25-
26)."  Brown Decl. ¶ 4 & Ex. A.

"District courts should generally not dismiss a *pro se* complaint without granting
the plaintiff leave to amend."  *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013)
(citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000)).  "However, leave to amend

---

subject to the general standard applicable to all civil complaints under the Supreme
Court's decisions in *Twombly* and *Iqbal*.'") (citation omitted); *White v. Vance,* No. 10-
CV-6142 (NRB), 2011 WL 2565476, at *2 (S.D.N.Y. June 21, 2011) (dismissing action
because court was unable to discern nature of plaintiff's claim from vague references to
United States Constitution).

is not necessary when it would be futile." *Id.* (citing *Cuoco*, 222 F.3d at 112 (finding leave to replead would be futile where even liberal reading of complaint did not suggest that plaintiff had a claim inadequately pleaded that she should be given chance to reframe)).

Here, Shostack's proposed second amended complaint adds no factual allegations that cure the deficiencies in his amended complaint. The proposed pleading merely repeats the same conclusory allegations and interjects purely speculative grounds for relief. *See, e.g.*, Proposed Second Amended Verified Complaint ¶ 50 (alleging that Shostack "believes" that "Defendant IAC . . . is in the best position to prevent future FCRA violations"); ¶¶ 51-52 (alleging Shostack's belief that Zurcher and Lebda were "in the best position to prevent [Shostack's] information being given to the home improvement contractors [or] the mortgage companies . . .").

Accordingly, because Shostack's proposed second amended complaint would not withstand a Rule 12(b)(6) motion to dismiss, his leave to amend should be denied as futile. *See, e.g.*, *Ashmore*, 510 F. App'x at 49 ("[G]ranting leave to amend would be futile as the barriers to relief for Ashmore's claims cannot be surmounted by reframing the complaint."); *Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. 2004) (affirming denial of leave to amend as futile); *Selvam v. Experian Info. Solutions, Inc.*, No. 13-CV-6078 (DLI) (JO), 2015 WL 1034891, at *4 (E.D.N.Y. Mar. 10, 2015) ("[T]he complaint gives no indication that Plaintiff has a colorable claim under federal law and Plaintiff has already had one opportunity to amend the complaint. As any further attempt to amend the complaint would be futile, Plaintiff is denied leave to amend the complaint."); *Local Union 20 v. United Bhd. of Carpenters & Joiners of Am.*, No. 97-CV-5538 (CSH), 2001

WL 1005565, at *12 (S.D.N.Y. Aug. 6, 2001) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim upon which the court has previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").

### III.   CONCLUSION

For all of the foregoing reasons, I recommend that Defendants' motion to dismiss should be granted and that all of Shostack's claims be dismissed with prejudice except the TCPA claim, which Defendants did not move to dismiss and which should be allowed to proceed.  Because any further amendments to the complaint would be futile, I recommend that Shostack's motion for leave to amend be denied.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  If Shostack does not have

access to cases cited herein that are reported on LexisNexis or Westlaw, he should

request copies from counsel for defendants. *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d

Cir. 2009).

Dated: New York, New York
   September 16, 2015

              JAMES L. COTT
              United States Magistrate Judge

**A copy of this Report and Recommendation has been mailed to the following:**

Dave Shostack
4 Sutton Wood Dr.
Commack, NY 11725